UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CURTIS RODRIGUE** | **CIVIL ACTION NO.: 2:20-CV-02267** |
| **VERSUS** | **SECTION: L (2)** |
| **NATIONAL INTERSTATE INSURANCE COMPANY, NORMAN NELSON, AND SLAY TRANSPORTATION, CO. INC.** | **JUDGE ELDON E. FALLON** |
| | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE DEFENDANTS' MEDICAL BILLING EXPERT NANCY MICHALSKI

MAY IT PLEASE THE COURT:

Curtis Rodrigue suffered serious and debilitating injuries resulting from the subject collision. He has received medical treatment for these injuries from several providers, including Avala Hospital ("Avala"). Mr. Rodrigue was charged $97,407.00 by Avala for the treatment he received from October 22, 2019 through June 29 of 2020. The only deposits to secure the service have been paid by Mr. Rodrigue, and the Avala bill otherwise remains outstanding in full. There is no evidence to suggest Mr. Rodrigue incurred the Avala treatment and attendant bills in bad faith.

Defendants have hired Nancy Michalski, a self-appointed expert in medical bill auditing, to review the Avala bills only. She has opined the Avala bills are excessive, and the reasonable charge for the treatment rendered by Avala should be $34,966.88. Defendants intend to submit these opinions to the jury to secure a substantially reduced verdict for Mr. Rodrigue's past medical expenses.

However, Ms. Michalski's opinions would only serve to confuse and mislead the jury as to the amount actually owed by Mr. Rodrigue. Further, Ms. Michalski's opinions rely almost entirely upon published references that specifically forbid their commercial use by purported experts like

Ms. Michalski. As such, defendants should be prohibited from presenting Mr. Michalski's opinions to the jury.

**LAW AND ARGUMENT**

This Court must perform its important gatekeeping role of ensuring that any expert testimony or evidence is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 1999 (5th Cir. 2016).

I. **Ms. Michalski's Opinion Should Be Excluded Because It Relies Upon Scientifically Unreliable Sources**

Testimony offered by a qualified expert must be the "product of reliable principles and methods."[1] This rule is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Daubert*, 509 U.S. 579, 592. In *Daubert*, the Supreme Court emphasized the common law insistence upon "the most reliable sources of information." *Id.* Further, the party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *Id.* at 589.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95 (cited in *Melendez v. S. Fid. Ins. Co.,* No. CV 20-689, 2020 WL 6868850, at *2 (E.D. La. Nov. 23, 2020)).

---

[1] Federal Rule of Evidence 702(c).

In the case of Ms. Michalski, none of the *Daubert* factors weigh in favor of admission of her testimony in the field of "medical bill auditing." In her report, no information is provided to explain how her "theory has been tested," what "the known or potential rate of error" would be for her methodology, or whether there is "general acceptance of the methodology in the scientific community." Neither the "expert" nor the defendants, who have the burden to establish reliability, can offer any evidence to satisfy these factors.

The only factor even mentioned in Ms. Michalski's curriculum vitae[2] or report is whether her methodology is subject to peer review. This is discussed in a section entitled "Peer Reviewed Scientific Audit Methodology" of her report.[3] However, even this section fails to set forth any evidence that her methodology is actually peer reviewed. In fact, the very sources she relies upon in forming her opinion are commercial publications expressly NOT subject to peer review nor publication, all of which contain disclaimers warning of potentially inaccurate information and limited use of the confidential proprietary information.

The only evidence offered to establish "peer review" of her methodology is a 2013 letter she solicited from Dr. Gerard Henderson stating the "methodology of Medical Bill Review utilized by Elevate Services, Inc." are "sound" and "credible."[4] This letter is simply not equivalent to the stringent peer review that occurs in scholarly publications as required by *Daubert*.

### A. Ms. Michalski's Opinion Should Be Excluded Because It Relies Upon Scientifically Unreliable Sources That Contain Inaccurate Information.

An expert's opinion must have a reliable basis in the knowledge and experience of her discipline. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). Although

---

[2] Her 16-page CV does not list one single peer reviewed publication or test. Exhibit A (Curriculum Vitae of Nancy Michalski).
[3] Exhibit B ("Med Bill Audit Analysis and Record Review," February 28, 2021 report) at p. 3.
[4] Exhibit B, at pp. 3, 92-93.

the sources used in an expert's opinion are generally considered by the jury in weighing the evidence, "in some cases 'the source upon which the expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

The jury should not be able to hear Ms. Michalski's opinions because the sources upon which she relies carry no scientific weight. Ms. Michalski heavily, if not exclusively, relied on commercial publications with no scientific merit that explicitly contain disclaimers warning the information contained in the respective publications may not be accurate. To be sure, the sources she relied upon have not been "subjected to peer review and publication."

According to her Expert Report, Ms. Michalski relied on values from three pricing databases:

- Physicians' Fee Reference (Yale Wassermann, DMD Medical Publishers, Ltd) (hereinafter "Physicians' Fee Reference")
- Medical Fees (Context4Healthcare Inc. Practice Management Information Corporation [PMIC]) (hereinafter "PMIC Medical Fees")
- National Fee Analyzer (Optum360, LLC. Optum) (hereinafter "Optum National Fee Analyzer").[5]
- Find A Code Medical and Billing Resource (hereinafter "Find A Code").[6]

All four of these sources take painstaking efforts to remind the user—here, Ms. Michalski—the sources are not to be relied upon for scientific inquiry:

The Physicians Fee Reference states:

- "Fee information contained in this product should not be used exclusively to set fees nor be taken as a recommended fee or reimbursement schedule, but rather as a basic guide to assist the reader in understanding the U.S. medical marketplace."
- "This product is a basic guide to be used for general reference purposes only."

---

[5] Exhibit B, at p. 66.
[6] Exhibit B, at pp. 52, 69.

- "The information in this product is an opinion (which may or may not prove to be accurate)."
- "The inclusion or exclusion of any given procedure or code does not in any way constitute a recommendation or preferred technique or approach to medical or dental treatment."[7]

The Optum National Fee Analyzer states similarly:

- "Information in this product is subject to change without notice and is provided for general informational purposes only."
- "Owners cannot guarantee the accuracy of any information presented."
- "Owners make no warranties, either express or implied, including warranties that this information is error free or accepted or approved by others."[8]

Find a Code instructs that:

- "FindACode … make[s] no warranties or representations, express or implied, that … any information obtained by you as a result of your use of the services will be accurate or reliable."[9]

PMIC Medical Fees has similar language:

- "This publication is designed to offer basic information regarding medical fees and fee schedule management."
- "[N]either the authors nor the publisher accepts any responsibility or liability with regard to errors, omissions, misuse or misinterpretation."[10]

This is hardly the language a court would expect to see in medical treatises or other scientific journals typically relied upon by experts. In fact, a recent Mississippi State Court recently rejected Ms. Michalski's expert testimony based on this rationale, namely **the sources themselves indicate they may or may not be accurate and that the information contained in the sources are not reliable.**[11] Rarely, if ever, do an expert's sources confess they are inherently unreliable. Yet, these express and repeated warnings did not deter Ms. Michalski from using those sources to

---

[7] Exhibit C (Physicians' Fee Reference).
[8] Exhibit D (National Fee Analyzer).
[9] Exhibit E (Find A Code).
[10] Exhibit F (PMIC Medical Fees).
[11] *Brandner, Sr. v. Golconda Holdings, LLC*, Case No. 07-0435, Hearing on August 7, 2020 (Transcript attached as Exhibit G).

support her opinions. As such, her testimony is not the "product of reliable principles and methods,"[12] and she should not be allowed to testify to opinions based on such references.

### B. Ms. Michalski's Opinion Should Be Excluded Because It Relies Upon Proprietary and Confidential Sources That Are Not Intended for Scientific Study or Medical Expert Testimony.

In addition to the fact that the information contained in her cited sources contain disclaimers warning of inaccuracy, the sources also warn that the information is not intended for scientific inquiry. Rather, the data should be limited to the general information purposes of the user. The sources all contain disclaimers warning the user about sharing the information with third parties, such as the Court, counsel, or the jury, and cautioning the user not to photocopy or otherwise disclose the material. In fact, the Physician's Fee Agreement contains the following instruction in large, bold ALLCAPS: "PHOTOCOPYING IS ILLEGAL."[13] The irony of actually providing a photocopy of a sheet of paper that states "PHOTOCOPYING IS ILLEGAL" should give the Court great pause in allowing an expert to testify who in doing so would clearly violate the terms of her user agreement with a private company. In addition to this clear warning, the sources all contain similar terms in their user agreements:

The Physicians Fee Reference states:

- "Wasserman Medical Publishers, Ltd. grants the User a limited, nonexclusive, revocable license to access and make personal, non-commercial use (unless User has a business relationship with Wasserman Medical Publishers, Ltd.) of the Wasserman Medical Publishers, Ltd. Site."
- "The foregoing licenses do not include any rights to: modify, download (other than page caching), reproduce, copy, or resell the Wasserman Medical Publishers, Ltd. Site, the Content or any portion or derivative thereof; *commercially use the Wasserman Medical Publishers, Ltd. Site*, the Content or any portion derivative thereof (unless User has a business relationship with Wasserman Medical Publishers, Ltd.); copy or download any User's account information for the benefit of any third party."[14]

---

[12] Federal Rule of Evidence 702(3).
[13] Exhibit C.
[14] *Id.*

The Optum National Fee Analyzer similarly states:

- "This product contains confidential information that is proprietary to Optum360 and FAIR Health, Inc. and is made available to you on the condition that you do not copy or disclose its contents."[15]
- "The information and content on this website is for your general educational information only."[16]

Find a Code instructs that:

- "Unless you have been specifically permitted to do so in a separate agreement with FindACode, you agree that you will not reproduce, duplicate, copy, sell, trade or resell the Services for any purpose."[17]

Ms. Michalski would violate these legal agreements by reproducing, copying, and disclosing the confidential information contained in these sources in a deposition or at trial. Ms. Michalski would necessarily have to disclose confidential information to the Court and jury if allowed to testify. However, the primary source publication stated sharing the information by photocopying would simply be illegal. Moreover, the information itself is not reliable by its own description. These references were meant for private individuals seeking "personal" or "general educational information only," not scientific data or testing that would be the subject of medical expert testimony. As such, these opinions must be excluded.

### C. The Letter from Gerard Anderson is Not "Peer Review" or Purposes of Federal Rule of Evidence 702.

The *Daubert* Court's reference to "peer review" describes the factor in terms of "*publication and* peer review." *Daubert,* 509 U.S. at 592 (emphasis added). Although the lack of peer review or publication is not dispositive to the admission of expert testimony, the letter from Gerard Anderson is woefully deficient. In opposition, defendants will likely cite a recent decision

---

[15] Exhibit D.
[16] *Id.*
[17] Exhibit E.

by the Eastern District of Louisiana, where the court held that "her methodology was peer-reviewed by Gerard Anderson, Ph.D." and used his letter as a factor in evaluating the reliability of her methodology. Ultimately, the court allowed her testimony in that case, but only for purposes of impeachment. *Collins v. Benton*, 470 F. Supp. 3d 596, 604 (E.D. La. 2020).[18] Simply put, an eight-year-old letter solicited for the sole purpose of establishing reliability of a company's methodology is not "peer review" in the context of medical testing or methodology.

Instead, the Supreme Court refers to the type of peer review that occurs during publication of an article or study in a peer reviewed academic journal. Further, Anderson's letter does not explicitly reference the methodology Ms. Michalski used in 2021 when she released her report, nor could it, as it was written in 2013. Ms. Michalski presents no information in her report nor is any evidence otherwise submitted by defendants to demonstrate the methodology used in 2021 was the same one referenced by Dr. Anderson in his letter. If any expert's opinions could be supported by a single letter from a random professional that was nearly a decade old, then the *Daubert* standard would be effectively eliminated. Since the 2013 letter is irrelevant to establishing reliability of Ms. Michalski's methodology, it should not be considered in assessing whether her methodology used in 2021 has been subject to peer review.

## II. Ms. Michalski's Opinions are Irrelevant as the Medical Expenses Were Not Incurred in Bad Faith.

Furthermore, Ms. Michalski's testimony would only serve to mislead or confuse the jury. In exercising its gatekeeping duty, the district court must be mindful of the balancing of interests set forth in Federal Rule of Evidence 403; i.e., balancing the probative value of the expert

---

[18] Even though this district court allowed her testimony in the past, it is black letter law that "a single district court decision . . . has little precedential effect … and it is not binding on . . . other district judges in the same district." *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987).

testimony and its prejudicial effect - as an expert's testimony can be misleading and prejudicial if this role is not properly satisfied.[19]

In assessing the reasonableness of a medical bill, the only relevant inquiries are (1) whether medical bills admitted into evidence are related to the accident, and (2) whether those bills were incurred in good faith. *Simon v. Lacoste,* 2005-550 (La. App. 3d Cir. 12/30/05), 918 So.2d 1102, 1104 (holding when the amount of past medical expenses to a plaintiff "is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment."); *see also Este' v. State Farm Ins. Companies*, 676 So.2d 850, 857, (La. App. 3d Cir. 1996); *Stiltner v. National Fire Ins. Co.*, 798 So.2d 1132, 1138 (La. App. 4th Cir. 2001) (holding a plaintiff shows his past medical expenses simply by admitting into evidence the medical bills he incurred from the accident). Unless the defendants show the bills are unrelated to the accident, the defendants are responsible for them. *Id.*

This liability may be reduced only by the defendants showing the medical expenses were actually incurred in bad faith. *Vines* v. W*ood*, 34,555 (La. App. 2 Cir. 4/4/01)*,* 785 So.2d 126, 131; *Chamber*s v. *Graybiel,* 25,840 (La. App. 2 Cir. 6/22/94*)*, 639 So.2d 361, *writ denied,* 94–1948 (La.10/28/94); *Starnes* v. *Caddo Parish School Board,* 598 So.2d 472 (La. App. 2d Cir. 1992); *Temple v. Shannon,* 505 So.2d 798 (La. App. 2d Cir. 1987). In this way, Louisiana law renders a tortfeasor liable for even overtreatment or unnecessary medical bills the plaintiff incurs in good faith. *Marshall v. Boydston*, 09-1137 (La. App. 3d Cir. 3/17/10), 33 So.3d 438, 445.

---

[19] Federal Rule of Evidence 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence.")

Here, there is no evidence Mr. Rodrigue incurred any expenses for any reason unrelated to the accident, nor have the defendants provided any evidence he was in bad faith in incurring those expenses. As those are the only relevant inquiries and those are the only inquiries, Ms. Michalski's testimony would not aid the jury.

Ms. Michalski can offer no opinion whether the medical expenses were incurred were related to the accident, and she can offer no opinion whether the expenses were incurred in bad faith. Therefore, she has no relevant expert testimony to provide.[20] Her opinions would simply mislead the jury into thinking they could consider issues outside the scope of what Louisiana Law and the Federal Rules of Evidence allows. Therefore, the potential prejudice and confusion far outweighs any probative value.

The prejudice would be even more exaggerated in this case because if a jury is permitted to hear from this witness and believe her testimony, they could only award $34,966.88, which is the amount she thinks is reasonable; however, the actual medical expenses are $97,407.00. This result would only give the plaintiff approximately a third of the actual medical expenses incurred. Such a result is unfairly prejudicial and contrary to Louisiana Law.

## **CONCLUSION**

For the reasons outlined above, plaintiff requests this Court exercise its gatekeeping role and enter an order prohibiting defendants from opinion, testimony, or evidence from their medical billing expert, Nancy Michalski.

---

[20] Even when admitted as an expert previously by the Eastern District of Louisiana, the court held that "Michalski's testimony cannot be used to decrease Plaintiff's recoverable medical expenses" unless there was evidence that Plaintiff had "incurred medical expenses in bad faith." *Collins*, 470 F. Supp. 3d at 604.

Respectfully submitted:

**DUDLEY DEBOSIER, APLC**

*/s/G. Adam Savoie*_____
STEVEN A. DEBOSIER (Bar No. 22331)
G. ADAM SAVOIE (Bar No. 32676)
CHRISTOPHER B. GIOE (Bar No. 36469)
622 Baronne Street
New Orleans, LA 70113
Telephone:    (504) 433-3333
Facsimile:    (504) 528-3069
*Counsel for Plaintiff, Curtis Rodrigue*