```
 1  IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI
 2
 3  MICHAEL BRANDNER, SR.                            PLAINTIFF
 4  VERSUS                                 CAUSE NO. 17-0435
 5  GOLCONDA HOLDINGS, LLC, ET AL.                   DEFENDANTS
 6  ------------------------------------------------------------
 7  TRANSCRIPT OF THE PROCEEDINGS HAD AND DONE IN THE
 8  MOTIONS OF THE ABOVE STYLED AND NUMBERED CAUSE, BEFORE
 9  THE HONORABLE LISA DODSON, CIRCUIT COURT JUDGE OF THE
10  SECOND CIRCUIT COURT DISTRICT OF THE STATE OF
11  MISSISSIPPI, ON AUGUST 7, 2020.
12  ------------------------------------------------------------
13  APPEARANCES:
14      Present and Representing the Plaintiff:
15          HONORABLE DAVID P PITRE
            Silbert Garon Pitre & Friedman
16          1303 Spring Street
            Gulfport MS 39507
17
    Present and Representing the Defendants Trevor
18  Lykins and Golconda Holdings:
19          HONORABLE NATHAN LEWIS BURROW
            Galloway Johnson Tompkins Burr & Smith
20          2510 14th Street
            Suite 910
21          GULFPORT, MS 39501
22      Present and Representing the Defendant State Farm:
23          HONORABLE DONALD C DORNAN JR
            Dornan Law Office
24          PO Box 117
            Gulfport MS 39502-0117
25
```

R. Michelle Stewart, CCR - Official Court Reporter

**EXHIBIT G**

1       (RULING ON NURSE MICHALSKI)
2              THE COURT:  All right.  So on 702
3       consideration, the court has to consider two
4       things.
5              First is the qualifications of the
6       witness which were challenged in the motions
7       but not so much in the argument today.  And
8       the only real challenge is that Ms. Michalski
9       really doesn't have any training or
10      experience with regard to what she's
11      testifying about, specifically being auditing
12      bills and testifying with regard to
13      reasonableness of charges.
14             It does not look like she has great deal
15      of actual formal training in that regard, but
16      according to at least what is in this record,
17      according to her affidavit, her curriculum
18      vitae, et cetera, apparently she spent a good
19      number of years working at this company that
20      she helped found which does just that,
21      although it does it mostly for lawyers and
22      corporations it appears.
23             But medical bill auditing is not a new
24      field or a new science.  It's been around for
25      awhile.  It does take some training and some

    1    experience.  So at this point in this record
    2    it doesn't appear that there is anything that
    3    would disqualify Ms. Michalski as far as her
    4    qualification.
    5         So then we look at the methodology
    6    whether it's reasonable, reliable, et cetera,
    7    and that's where mostly the argument has
    8    fallen today.  Now, I wholeheartedly agree
    9    that reasonableness of medical care as well
   10    as the charges for that medical care can be
   11    challenged.
   12         There's a reason that the statute
   13    provides that it is prima facie evidence and
   14    not that it is unrebuttable evidence.  So
   15    while Mr. Brandner certainly can present his
   16    medical bills and his medical information,
   17    that does not mean that it cannot be
   18    challenged in some manner.
   19         Generally that challenge does come
   20    through cross-examination or through asking
   21    other medical experts with regard to whether
   22    a certain procedure was necessary, whether
   23    the charges are what that medical provider
   24    would charge, et cetera.
   25         There's nothing that would prohibit

1   someone like Ms. Michalski to come in and
2   testify about this.
3           The problem I have with the methodology
4   is twofold.  First of all, with regard to the
5   sources, they are published sources.  That
6   does not mean they are reliable sources nor
7   does it mean that their methodology and their
8   manner of arriving at what they've arrived at
9   is accurate.  But apparently, according to
10  what's submitted, they've been relied on for
11  many years.
12          What is troubling is the disclaimer, and
13  it's in several of them.  I'm looking at the
14  one in the Physicians' Fee Reference at this
15  point that basically says, fee information
16  contained in this product should not be used
17  exclusively to set fees nor be taken as a
18  recommended fee or reimbursement schedule but
19  rather as a basic guide to assist the reader
20  in understanding the US medical marketplace.
21  The final decision and ultimate
22  responsibility for medical pricing lie with
23  the provider of services.
24          And then next paragraph says, this
25  product is a basic guide to be used for

1  general reference purposes only.  This
2  information in this product is an opinion
3  which may or may not prove to be accurate.
4      That alone leads the court to believe
5  that this is not something that an expert
6  could reasonably rely upon in reaching a
7  valid opinion because the documents
8  themselves indicate they may or may not be
9  accurate, they're not something to be relied
10 upon.  They're just something basically to
11 tell providers, hey, this is what other
12 people are charging, maybe you should look at
13 this.
14     So insofar as her opinion is based on
15 sources such as that, it would not meet the
16 qualifications of Rule 702 and she would not
17 be allowed to testify to opinions based on
18 such references.
19     I do note, however, in fact let me also
20 say in her affidavit she says, these are
21 market rates for the services to drive
22 business decisions.  So, again, these are for
23 folks to use to decide what to do in their
24 own business, not to use to decide what's
25 reasonable, et cetera.

1     But she does say, and I'm looking at
2     paragraph 18 of her affidavit, that she also
3     obtained information from and she lists six
4     what she calls local healthcare providers,
5     and so the record is clear, they're not local
6     here.  They're local in Louisiana.  But
7     that's basically where I believe Mr. Brandner
8     is residing, and I think that's where at
9     least some of the medical indicates he was
10    obtaining care.  So it would be local to
11    where the care was rendered.
12        And she does list those sources with
13    regard to making her reasonable value
14    calculations.  Now what she got from them,
15    I'm not clear on that because I only have
16    portions of depositions and portions of
17    records.  But certainly that to me would
18    appear to be a valid inquiry.  It would
19    appear to me to be something certainly that
20    she could rely on.
21        Let's say that she got from East
22    Jefferson that something was $100, from
23    Ochsner that it was $90, Baton Rouge was 95,
24    she could certainly testify that something in
25    that range would be reasonable for that area

```
 1              for that particular procedure.
 2                   So it would appear to me that at least
 3              that portion of her opinion whatever of her
 4              opinion is based upon those sources would
 5              pass muster with regard to acceptability and
 6              methodology.
 7                   The other thing that it appears to me
 8              that she could use and could rely on validly
 9              has to do with the coding, and I apologize,
10              but I don't remember the particular source,
11              but there is -- there's a standard source
12              that's used for actually coding of
13              procedures.  And it's a pretty standard
14              guideline I think.  And it's used I think
15              even by the government.
16                   So she certainly could testify with
17              regard to that.  In other words, this
18              particular code indicates this particular
19              type of procedure and the general cost for
20              that in this area is going to be "X".
21                   Now, she does also talk about the
22              Southern District opinion.  I don't think
23              that's really of any relevance here because I
24              agree that Mr. Schneider there, I probably
25              would've done the same thing Judge Ozerden
```

1   did because of at lease as I understand from
2   that opinion what Mr. Schneider's methodology
3   was.
4       I don't think that's the same
5   methodology as here, but with regard to the
6   sources, they talk about just being for
7   reference purposes, it's an opinion, it may
8   or may not be accurate, et cetera, those
9   can't be used and she can't testify to
10  anything based on those.
11      Now, I do recognize the opinion out of
12  Lauderdale County.  As I've said many times,
13  no other trial court's opinion is binding on
14  this court whether it's another circuit
15  court, a district court, et cetera.  But I
16  certainly do read those because many times
17  those judges have some insight that is
18  helpful.
19      And it Judge Wright's case, he had
20  whatever facts he had, but it does appear
21  that his concern in that case had to do with
22  the fact that the plaintiff was going to be
23  responsible for the entire amount of the
24  medical bills.  He then talks in the next
25  paragraph about the collateral source rule.

         So where I differ with him is, certainly there's no dispute that if Mr. Brandner wins or doesn't win this case, he's going to be responsible for these medical bills. I don't think there's any dispute at this point that he can put on proof of what those medical bills are. Certainly he has to lay any proper foundation for that. I don't think that implicates the collateral source rule, number one.

         Number two, I don't believe Ms. Michalski's testimony directly implicates the collateral source rule even if some of her opinions may be based on something that came from Medicare or Medicaid because she's not saying that this should be discounted because that's all Medicaid will pay or this should be discounted because that's all insurance would pay.

         Now, certainly she should not be allowed to testify with regard to those things or with regard to reimbursement rates by those entities if that is in fact what she's testifying to. As I understand, that testimony was in another case at some other

time.

So I don't see directly that the collateral source rule is implicated nor do I see, at least in what I read that she provided, that she intends to testify about those particular sources and what those particular sources would have paid had they been in place here. And if she does, then she won't be allowed to do that.

So I have no idea about whether she can separate out those portions of her opinion and if she's going to have to redo her opinion. In other words, is that going to affect her opinion if she's not allowed to rely on these particular sources. So I have to ask you that, Mr. Dornan, if you know.

MR. DORNAN: I don't know, Your Honor.

THE COURT: All right. And my thought being she may have to supplement.

MR. DORNAN: Possibly, yes, ma'am. I'm sorry. I did not think to pre-ask that question.

THE COURT: All right. And she may not. I mean, she may have gotten enough information from them that she says, it

```
1          doesn't change my opinion at all, but
2          basically I'm not striking her, but I am not
3          going to let her testify to those particular
4          sources.
5                Now, I don't have every one of these
6          because I don't think I had something -- was
7          it Optum I didn't have anything for.  So I'm
8          not sure whether it would be the same.  Yes,
9          I do have Optum.  So they're all pretty much
10         the same thing saying, this is just our view.
11         This is just our information, and it says, we
12         respond -- they say, we respond to changing
13         market conditions.  Information should not be
14         interpreted as a commitment on the part of
15         Optum.
16               So they all have their lawyer language
17         in them to try to say, you know, don't rely
18         on us, we're just publishing this and
19         charging you for it but don't rely on this.
20               So, all right, anything else on that
21         motion other than potentially there would
22         have to be some supplementation?
23               MR. PITRE:  Well, you are looking at
24         Mr. Dornan.  So would you like to hear from
25         me?
```

```
1                 THE COURT:  Well, I'm just saying
2          potentially supplementation.
3                 MR. DORNAN:  I have nothing further
4          other than what you already said.
5                 THE COURT:  All right.
6                 MR. PITRE:  Your Honor, I just want to
7          make sure I understand.  As I appreciate the
8          court's ruling, Nurse Michalski certainly is
9          not disqualified.  Her testimony has been
10         limited.
11                THE COURT:  Correct.
12                MR. PITRE:  And my appreciation is with
13         respect to her specific sourcing of prices
14         from New Orleans area --
15                THE COURT:  Metairie I think somewhere.
16                MR. PITRE:  -- facilities, she can
17         testify to that, and I wasn't quite clear
18         with respect to the codes.  I guess she can
19         testify that she relied on Mr. Brandner's
20         codes to compare apples to apples with
21         respect to those New Orleans --
22                THE COURT:  Correct.  And she can
23         testify to what they are and why she's used
24         them, those kinds of things.  I think those
25         codes are generally acceptable.  I didn't see
```

```
 1           any challenge to the codes themselves in
 2           here.
 3                MR. PITRE:  Well, if we do, it would go
 4           to the weight, not admissibility.  So and
 5           then -- but in terms of her -- this amalgam
 6           of analysis that led to these figures that
 7           are inseparable, you know, she came up with a
 8           total of 62,000 for his 360,000 in care, as I
 9           appreciate that, because that relied on the
10           source data that the court has deemed to lead
11           to its opinion that her testimony be limited,
12           she's going to be restricted to the
13           comparison of actual charges that she gleaned
14           from local area providers for similar
15           treatment, similar codes and nothing more.
16                THE COURT:  Correct.  And I didn't see
17           this is here.  Anything that's in basically
18           her experience that she's already related to
19           you guys.  When y'all don't give me the whole
20           deposition, I'm not sure if there are other
21           things in there or not.
22                MR. PITRE:  I understand.
23                THE COURT:  But insofar as these
24           particular sources that you guys have listed
25           and that I've been able to look at, those are
```

1       basically saying, don't rely on this.
2            MR. PITRE:  Okay.  All right.  Thank
3       you, Your Honor.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

STATE OF MISSISSIPPI

COUNTY OF HANCOCK


### CERTIFICATE OF COURT REPORTER

I, R. Michelle Stewart, CCR 1305, Official Court Reporter for the Second Circuit Court District of the State of Mississippi, do hereby certify that the foregoing 14 pages constitute, to the best of my skill and ability, a true and correct transcript of the MOTIONS had on the 7 day of August, 2020, before the Honorable LISA DODSON, Circuit Court Judge of the Second Circuit Court District of the State of Mississippi, being a regular day in the August Term of Hancock County Circuit Court at Bay St. Louis.

I do further certify that my certificate annexed hereto applies only to the original and certified transcript and electronic disks.  The undersigned assumes no responsibility for the accuracy of any reproduced copies not made under my control and direction.

WITNESS MY SIGNATURE on this, the 12 day of August, A.D., 2020.

_____
R. MICHELLE STEWART, CCR 1305
Official Court Reporter