UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CURTIS RODRIGUE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2267** |
| **NATIONAL INSURANCE COMPANY ET AL.** | **SECTION "L" (2)** |

### ORDER AND REASONS

Before the Court are Plaintiff's motions to exclude the testimony of Defendant's two medical billing experts. R. Docs. 69; 70. Defendants oppose the motions, R. Docs. 71; 73, and Plaintiff replied, R. Docs. 82; 84. Having considered the parties' arguments and the relevant law, the Court now rules as follows.

I. BACKGROUND

This case arises from a three-vehicle accident that occurred on June 17, 2019 on I-12 Westbound in St. Tammany Parish, Louisiana. R. Doc. 1-4 ¶ 2. Plaintiff Curtis Rodrigue alleges that Norman Nelson was operating a hazardous materials tanker truck owned by Slay Transportation Co, Inc. ("Slay Transportation") when he rear-ended Plaintiff's vehicle stopped for traffic. *Id*. ¶¶ 4-5. Plaintiff was then jolted forward into the rear-end of a vehicle in front of him owned by Blue Star Pest Control. *Id.* ¶ 6. Plaintiff alleges that he suffered from serious head, neck, and back injuries as a result of the accident, requiring extensive treatment including multiple MRIs and interventional spinal injections. *See* R. Doc. 1-6 and 1-7. Plaintiff brought suit against National Interstate Insurance Company ("NIIC"), Slay Transportation, and Norman Nelson to recover past and future damages for the following: physical pain and suffering; mental anguish; loss of

enjoyment of life; medical expenses; scarring and disfigurement; lost wages and/or earning capacity; and property damage. R. Doc 1-4 ¶ 11.

Defendants answered, generally denying liability and raising a number of affirmative defenses including third-party fault, comparative fault, and failure to mitigate damages. R. Doc. 5 ¶¶ 24, 25. On February 26, 2021, Defendant Slay Transportation filed an amended answer admitting that (1) Nelson was solely and completely at fault for the subject motor vehicle accident of June 17, 2019; (2) Nelson was acting in the course and scope of his employment with Slay Transportation when the incident occurred and (3) Nelson was operating a vehicle owned by Slay Transportation at said time. R. Doc. 38. As a result, this Court granted Defendants' motion for partial summary judgment dismissing Plaintiff's negligent hiring, training, supervision and entrustment claims. R. Doc. 50 at 8.

## II. PRESENT MOTIONS

### a. Plaintiff's *Motion in Limine* to Exclude Defendants' Medical Billing Expert Nancy Michalski [R. Doc. 69]

Plaintiff seeks to exclude testimony by Defendants' expert Nancy Michalski as to the reasonable cost of Mr. Rodrigue's past medical treatments. Plaintiff argues that Ms. Michalski's testimony must be excluded because (1) her opinion relies on scientifically unreliable sources and (2) such testimony is irrelevant because Plaintiff's medical expenses were not incurred in bad faith. R. Doc 69-1 at 2, 8. First, Plaintiff points to explicit disclaimers contained in all four of Michalski's sources[1] which state the information contained therein are not to be relied upon for scientific inquiry; therefore, Plaintiff asserts these sources lack any scientific merit. *Id.* at 4. Second, Plaintiff argues that Ms. Michalski's opinions as to the reasonableness of Plaintiffs' medical expenses

---

[1] The relevant sources are the Physicians' Fee Reference; Medical Fees; National Fee Analyzer; Find a Code Medical and Billing Resource. *See* R. Doc. 69-4 at 69.

would only serve to mislead and confuse the jury because there is no evidence to suggest that Mr. Rodrigue's medical expenses were unrelated to the accident or that his medical bills were incurred in bad faith. *Id.* at 10.

In opposition, Defendants argue Ms. Michalski's methodology is widely utilized throughout the medical community and that the same methodology has been recognized as reliable in this District. *Id.* at 4-6. (citing *Collins v. Benton*, 470 F. Supp. 3d 596 (E.D. La. 2020); *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *12 (E.D. La. Apr. 26, 2019)). Defendants maintain that they are entitled to contest the reasonableness of Plaintiff's medical expenses because the possibility of overcharging and physician credibility are at issue in this case. *Id.* at 8-9.

### b. Plaintiff *Motion in Limine* to Exclude Defendants' Medical Billing Expert Charlene Canada. [R. Doc. 70]

Plaintiff also seeks to exclude the testimony of Defendants' medical billing expert Charlene Canada as to the reasonable cost of Plaintiff's Life Care Plan for future medical treatment. R. Doc. 70 at 1. In support, Plaintiff reiterates the above arguments that the medical billing expert's methodology is scientifically unreliable and relies upon proprietary and confidential sources. R. Doc. 70-1 at 3-6. Additionally, Plaintiff argues that Ms. Canada's methodology is inadequate because she only consults reference materials, rather than direct providers. *Id.* at 8-9.

In opposition, Defendants maintain that Ms. Canada's methodology is widely used throughout the life care planning and rehabilitation professional community to forecast future treatment costs. R. Doc. 73 at 2. In forming a comparative value analysis, Ms. Canada "assesses the services recommended; assigns appropriate coding to the services; and then accesses reliable data sources to provide the usual, customary, and reasonable price for each service based on the client's geographic location." *Id.* at 3. Defendants contend that this method of consulting databases

that compile charge-based data from providers across the country represents the modern standard, as opposed to Plaintiff's proposed expert's method of quoting treating providers for services. *Id.* at 4.

### III. LAW & ANALYSIS

#### a. Legal Standard

Federal Rule of Evidence 702 gives a district court considerable discretion to admit or exclude expert testimony. *See General Electric Co. v. Joiner*, 522 U.S. 136, 138-39 (1997). Rule 702 provides that an expert witness "qualified ... by knowledge, skill, experience, training, or education," may testify when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. For the testimony to be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993).

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. Proper deference is to be accorded to the jury's role "as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to

be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* (quoting *Viterbo*, 826 F.2d at 422).

### b. Expert Testimony regarding Past Medical Expenses

Plaintiff has filed a motion to exclude the opinions of Defendants' proffered medical billing expert as to the reasonableness of plaintiff's past medical expenses. R. Doc. 69. Although styled as *Daubert* challenge, the determinative issue presented is not the expert's qualifications or methodology, but the admissibility of the testimony. The Court now turns to that issue.

Plaintiff was charged $97,407.00 in medical expenses for injuries allegedly resulting from the July 17, 2019 collision. R. Doc. 69-1 at 1.[2] Defendants apparently do not object to the treatment received but to the cost of that treatment. R. Doc. 71 at 8-9. In support of this argument, Defendants have retained Ms. Michalski to provide an audit of the Plaintiff's past medical bills and to determine "the reasonable marketplace value for the same services, in the same year, in the same community for all of the past medical treatment provided." R. Doc. 71 at 1; 71-1 at 1. Ms. Michalski concluded that Plaintiffs' bills are excessive and the reasonable charge for the treatment should be $34,966.88 R. Doc. 71-1 at 10.

In order to testify at trial, Ms. Michalski's opinions must assist the trier of fact to understand a fact in issue. Fed. R. Evid. 702(a). It is well-established that past medical expenses are special damages that are "easily measured" and can be established with "reasonable mathematical certainty." *See Koehn v. Rhodes*, 38–941 (La. App. 2 Cir. 9/24/04), 882 So. 2d 757, 763; *Mack v. Wiley,* 2007-2344 (La. App. 1 Cir. 5/2/08), 991 So. 2d 479, 489, *writ denied,* 2008-1181 (La. 9/19/08), 992 So. 2d 932. Under Louisiana law, "a tortfeasor is required to pay for medical treatment of his victim, even for overtreatment or unnecessary treatment, unless such treatment

---

[2] Defendants have already admitted to liability for the collision through the negligence of the defendant driver. *See* R. Doc. 38.

was incurred by the victim in bad faith." *Alexander v. Ford*, 03-887 (La. App. 5 Cir. 1/27/04), 866 So. 2d 890, 899 (citing *Orgeron v. Prescott,* 93–926 (La. App. 5 Cir. 4/14/94), 636 So.2d 1033, 1041, *writ denied*, 94–1895 (La.10/28/94), 644 So.2d 654)). Louisiana courts have routinely held that the trier of fact commits reversible error when it fails to award the full amount of medical expenses plaintiff incurred because of the defendant's negligence. *See e.g.*, *Gunn v. Robertson,* 801 So.2d 555, 564 (La. App. 5 Cir. 2001); *Yee v. Imperial Fire & Casualty Ins. Co.*, 25 So. 3d 872, 877 (La. App. 2 Cir. 2009); *Revel v. Snow*, 664 So.2d 655, 661 (La. App. 3 Cir. 1995).

In sum, a jury could only reduce plaintiff's award for past medical expenses if it found that not all of his injuries were caused by defendant's negligence or that he incurred unnecessary treatment in bad faith. *Simon v. Lacoste*, 2005-550 (La. App. 3 Cir. 12/30/05), 918 So. 2d 1102, 1104-05. Bad faith exists where plaintiffs continue treatment, despite having already been healed, for the sole purpose of increasing their damages. *Bass v. Allstate Ins. Co*., 32,652 (La. App. 2 Cir. 1/26/00), 750 So.2d 460. Similarly, a plaintiff's deliberate exaggeration of the impact of a vehicle collision and the extent any alleged injuries may constitute "bad faith." *Hamilton v. Wild,* 40,410 (La. App. 2 Cir. 12/14/05), 917 So. 2d 695. On the other hand, courts will not find bad faith on the part a plaintiff simply because the trier of fact disagrees with a course of treatment. *Vines v. Wood*, 34,555 (La. App. 2 Cir. 4/4/01), 785 So. 2d 126, 131.

No such evidence of bad faith exists here. Instead, Defendants argue that Plaintiff was "double-billed and overcharged" for procedures performed at Avala Hospital. R. Doc. 71 at 9. Defendants contend that the expert testimony is therefore admissible because "overcharging and physician credibility are particularly relevant here." *Id.* at 8. Louisiana law is clear that "[e]ven if a tort victim has been overcharged for medical treatment, the tortfeasor is liable for the expenses unless they were incurred by the victim in bad faith." *Lair v. Carrike*r**,** 574 So.2d 551, 553 (La.

App. 3d Cir. 1991); *Beasley v. Yokem Toytoa*, 33,805 (La. App. 2d Cir. 8/23/00), 767 So.2d 149. Accordingly, whether a treating physician overcharged a plaintiff for medical service is not within the jury's province to decide.

Testimony by Ms. Michalski for the purpose of contesting the reasonableness of plaintiff's medical bills would invite the jury to do something it cannot do, and thus, is not relevant under Rule 401 of the Federal Rules of Evidence. Moreover, a contrary result would require an injured plaintiff to shop around for the cheapest course of treatment in order to guarantee full recovery. This would place an improper burden on the injured party. Defendants' remedy in such an instance might well be to pursue the doctor in a separate proceeding for damages it allegedly sustained by being overcharged .

c. **Expert Testimony regarding Future Expenses**

Plaintiff also seeks to exclude the opinions of Defendants' medical billing expert, Charlene Canada, regarding Plaintiff's future medical costs. R. Doc. 70. The focus here is not on the treatment Plaintiff received or the cost of that treatment as discussed above. Instead, it is what treatment the Plaintiff is likely to receive and the estimated cost of that future treatment.

Expert testimony estimating the reasonable value of future medical treatment, unlike past medical expenses, is commonly introduced in state and federal courts. *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *13 (E.D. La. Apr. 26, 2019). This is because "calculating future medical expenses necessarily entails an estimation of the reasonable value of prospective treatment, which the plaintiff must support through 'medical testimony.'" *Id.* (quoting *Tamayo v. Am. Nat. Gen. Ins. Co.*, 150 So. 3d 459, 470 (La. App. 5 Cir. 2014)); *see also Menard v. Lafayette Ins. Co.*, 2009-1869 (La. 3/16/10), 31 So. 3d 996, 1006 ("[It] is well acknowledged an award for future medical expenses is in great measure highly speculative and not susceptible to calculation

with mathematical certainty.") For this reason, an award for future medical expenses often turns on questions of witness credibility and inferences. *Menard*, 31 So.3d at 1006.

Defendants retained Ms. Canada to provide a comparative value analysis of the life care plan prepared by Plaintiff's proposed expert, Lacy Sapp. R. Doc. 73 at 1. Ms. Canada contends that Sapp's proposed costs are more than what would be necessary to ensure Plaintiff receives sufficient medical treatment over the course of his life. *Id.* Plaintiff argues that Ms. Canada's opinions must be excluded because she relies on scientifically unreliable data. R. Docs. 70; 84.

Ms. Canada is a certified Life Care Planner, Rehabilitation Counselor, and Case Manager. R. Doc. 73-3 at 2. She holds a Bachelor of Science in Social Sciences/Psychology from the University of Wyoming and a master's degree in Rehabilitation Counseling from the Texas Tech University – Health Sciences Center. *Id.* Ms. Canada has over seventeen years of experience working as a life care planner and rehabilitation counselor. *Id.* Accordingly, the Court finds Ms. Canada is qualified as an expert in life care planning.

As for the reliability of Ms. Canada's expert testimony, the Court must assess whether the reasoning or methodology underlying Ms. Canada's opinions is valid. *See Daubert*, 509 U.S. at 589. In preparing her comparative value analysis, Ms. Canada assessed the services recommended by Plaintiff's life care expert; assigned appropriate CPT (Current Procedural Terminology) coding to the services; and then accessed pricing databases to calculate the usual, customary, and reasonable price for each service based on the Plaintiff's specific geographic location. R. Doc. 73-1 at 4.

Here, Plaintiff challenges the accuracy of the pricing databases underlying Ms. Canada's analysis. R. Doc. 70-1 at 2. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and

should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County,* 80 F.3d 1074, 1077 (5th Cir.1996)). Ms. Canada's testimony will presumably be subject to vigorous cross examination by Plaintiffs. "It is the role of the adversarial system, not the court, to highlight weak evidence." *Id.* As such, the Court finds Ms. Canada's methodology is reliable and her testimony is relevant to the calculation of future medical expenses.

### IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion *in limine* to exclude the expert report and testimony of Nancy Michalski, R. Doc. 69, is **GRANTED.**

**IT IS ALSO ORDERED** that Plaintiff's motion *in limine* to exclude expert report and testimony of Charlene Canada, R. Doc. 70, is **DENIED.**

New Orleans, Louisiana, this 2nd day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE